GARDEN, JUDGE:
The accident which is the subject of this claim occurred at 6:20 a.m. on April 10,1974, onU.S. 119 about 2V2 miles south of Madison, West Virginia. The claimant was proceeding in a northerly direction on this road enroute from his home in Logan to his place of employment as an end loader operator with the Omar Mining Company, which is located at Pond Fork some seven or eight miles from Madison. U.S. 119 at the accident scene is a two-lane asphalt roadway, one lane for northbound travel and one lane for southbound travel. The road was wet, and it was a dark, foggy morning necessitating the claimant to operate his vehicle with its headlights burning. The claimant was operating his father-in-law’s 1963 Volkswagon automobile and was travelling at a speed of about 40 miles per hour. According to the claimant,- by reason of the foggy condition, his visibility was limited to a distance of 50 feet.
The claimant had just completed making a slight turn to the left when he observed a small rock in his lane of travel which he felt that he could straddle., but he also observed a larger rock 10 to 15 *235 feet north of the smaller rock but also in his lane of travel. This latter rock was about two feet in height, and there being no approaching traffic in the southbound lane, the claimant started to swerve to his left to avoid the larger rock when he saw a large boulder rolling from his right, striking the right front side of his car. As a result the claimant lost control of his car and ultimately struck another large boulder in the road located further to the north.
As a result of the accident, the claimant’s right ankle was fractured in two places. He also suffered a lacerated lip and gum, a lacerated left wrist and severe contusions- to his chest, right shoulder and left elbow. He was confined in the Boone Memorial Hospital for a period of five days and was unable to resume work until June 1,1974, as a result of his injuries. As an additional result, he incurred medical expenses and loss of earnings in excess of $2,300.00, and the car which he was operating, which he had previously agreed to purchase from his father-in-law for $400.00 was rendered a total loss.
The testimony established that at and near the accident scene, the terrain of U.S. 119 to its east, or to the right of the northbound claimant, consisted of a high rock cliff, customarily found in the mountainous areas of West Virginia, and it was established that the rocks hereinabove described, without doubt, had fallen from this rock cliff. This rock cliff extends for a distance of some 100 feet, and at the southern end of this rock cliff, there is a rather large abandoned stone quarry where stone had been quarried from the face of the hillside and back into the hillside for a distance of about 150 feet. The testimony further established that operations at this quarry had ceased around 1940.
The claimant testified that he had travelled U.S. 119 five days a week for a period of three months prior to the accident and had never observed any loose rocks in this particular area. Fred Conley, called as a witness by claimant, testified that he was also employed by Omar Mining Company and had been travelling U.S. 119 to and from work for a period of six years, and that while he had never seen any rocks fall from this cliff, he had from time to time observed small rocks on the berm of the road which he assumed had fallen from the cliff.
The respondent called as a witness, Danny Gunnoe, who testified that he was employed by respondent in April of 1974 and had been employed for a period of four years prior thereto; that he had *236 driven a-truck for the first two years and had thereafter operated a high lift end loader; that he travelled the accident area at least once a week and that while one of his duties was to remove rocks from highways, he had never observed any rocks in the road or the berm in the accident area. James C. Chambers who in April of 1974 was a foreman for respondent, also testified for respondent. His testimony revealed that while he had travelled the accident area almost on a daily basis for some six years, he had never observed any fallen rocks near the quarry area nor had he ever recieved any report of loose rocks in the area.
This Court consistently has held in many similar cases that the State is not a guarantor of the safety of travelers on its highways and that its duty to travelers is one of reasonable care and diligence in the maintenance of a highway under all the circumstances. Edgell v. Department of Highways, 10 Ct. Cl. 161; Walker v. Department of Highways, 10 Ct. Cl. 32; Mullins v. Department of Highways, 9 Ct. Cl. 221; Lowe v. Department of Highways, 8 Ct. Cl. 210; and State Farm Mutual Automobile Insurance Company v. State Road Commission, 7 Ct. Cl. 54. The unexplained falling of a rock or boulder into a highway, without a positive showing that the Department of Highways knew or should have known of a dangerous condition and should have anticipated injury to person or property, is insufficient in our opinion to justify an award.
The claimant, who was most ably represented by counsel, attempted to distinguish this case from the factual situations in the above cited cases. The claimant called as an expert witness, William G. Whisnand, a consulting geologist with over 25 years experience in the field of geological engineering. Mr. Whisnand testified that he inspected the accident scene on November 10, 1975, and that he observed a large boulder located off of the highway and in the entrance to the quarry. He stated that it was as large as the front of a standard automobile and some 3Vz to 4 feet high. Although there was some dispute.in the evidence, we feel that the evidence did establish that the boulder which struck the claimant’s car, subsequent to the accident, had been shoved into the quarry entrance. He further testified that about 75 feet north of the entrance to the quarry, he found a freshly exposed area on the face of the rock cliff, and that it was his opinion that the large boulder which struck the claimant’s car had fallen from this area. Mr. Whisnand was of the further opinion that the blasting operations that had taken place in the quarry prior to 1940, and in particular the blasting on the north side of the quarry near U.S. 119, *237 had caused induced fractures in the rock behind the face of the rock cliff, and these induced fractures that started near the entrance to the quarry could extend as far north as 150 feet behind the face of the rock cliff.
Moisture within these fractures which thereafter froze would increase the size of the fracture and thus cause a general instability to the rock cliff formation, according to Mr. Whisnand. It was his opinion that this condition caused the boulder to break away the morning of April 10, 1974, and strike the claimant’s car.
This testimony was introduced to demonstrate that respondent should have known of this condition and should have taken remedial measures to correct the condition. Mr. Whisnand did admit that the induced fracture immediately behind the boulder that fell could not have been visualized prior to the fall. While we are most sympathetic to the claimant who suffered painful and permanent injuries through no fault on his part, we do not feel that the testimony of Mr. Whisnand is sufficient to make this claim an exception to the general rule as hereinabove set forth, and we, therefore, disallow the claim.
Claim disallowed.