WALLACE, JUDGE:
On May 26, 1977, at about 5:30 p.m., David Jeter, aged 18, was operating an automobile belonging to his father, Collie Jeter, in an easterly direction on Alternate Route 22 in the City of Weirton in Hancock County, West Virginia. He was accompanied by his brother, Kermit Jeter, aged 13, who was seated on the passenger side of the front seat. The right front window was down, and young Jeter had his right arm resting on the windowsill with his elbow protruding from the car. Alternate Route 22 is a three-lane road, with two lanes reserved for traffic moving uphill or in an easterly direction, and one lane for traffic moving downhill or in a westerly direction. As a motorist proceeds in an easterly direction or uphill, an almost vertical wall of stone and rock is passed. The evidence established that this wall is about 10 feet from the paved portion of the right-hand, eastbound lane, and is about 50 feet in height.
As David Jeter was passing this area, a large boulder became dislodged from the cliff and struck the hood of the car, the right front door, and the center post of the car. Unfortunately, it also struck the claimant, Kermit Jeter, in the right arm, fracturing it at the wrist and elbow. The testimony indicated that the boulder apparently split when it struck the car, and only half of it was found in the back seat of the car. It was estimated that the half found in the car was about 2 1/2 feet in diameter and was too heavy to be removed by one man.
A passing City of Weirton policeman was flagged down. He took young Jeter to the hospital, where the boy was confined for a period of two days. During that time, the fractures were reduced, and his right arm was placed in a cast. The claimant, Kermit Jeter, testified that the cast remained on his arm for seven weeks, during *410 which he experienced pain. After the cast was removed, he was restricted in his activity for a period of three weeks. No evidence was presented to establish any permanent injury, and young Jeter testified at the hearing that he was not experiencing any problems with this right arm. Total medical expenses in the amount of $703.90 and damage to claimant Collie Jeter’s car in the amount of $1,586.00 were stipulated.
Cathy Sobel, the senior clerk in respondent’s Hancock County headquarters, testified that she had reviewed all her records during the month of May, 1977, and that they failed to reveal that any complaints of falling rocks had been received. She did indicate that during her 9 1/2 years as an employee of the respondent, road crews would, on occasion, be required to pick up a few rocks that had fallen along Alternate Route 22. Elmer Shepherd, respondent’s general foreman in Hancock County, testified that the respondent had not conducted any activities, construction or otherwise, in the area of the accident scene, which could have precipitated the falling of the subject rock; that he was familiar with the area of the accident; and that “Falling Rock” signs had been erected immediately to the east and west of the scene. Mr. Shepherd further stated that no regular patrols were assigned to check roads in Hancock County for the possibility of falling rocks, but that he, his superintendent, and his foreman did, in the course of their regular activities, act as patrols for any impending dangers. .
In Hammond v. Department of Highways, 11 Ct.Cl. 234 (1977), this Court held, “The unexplained falling of a rock or boulder onto a highway, without a positive showing that the Department of Highways knew or should have known of a dangerous condition and should have anticipated injury to person or property, is insufficient. . . to support an award.” Likewise, in Collins v. Department of Highways, Claim No. CC-79-41 (1979), a recovery was denied when a rock fell from an embankment and struck the claimant’s car.
Counsel for the claimants, in order to distinguish the present factual situation from those in the claims cited above, called John L. Velegol, Jr., as a witness. Mr. Velegol testified that he was a licensed surveyor in the State of West Virginia, and that he had done excavation and strip mining work. He stated that he had visited the accident scene and made certain measurements which revealed that the rock wall was about 50 feet high and practically vertical, and that the wall consisted essentially of three areas. The *411 lower third consisted of sandstone, the middle third, shale, and the upper third, sandstone. According to the witness, the layer of shale had become oxidized and had eroded away in small pieces, thus removing the support for the top layer of sandstone. It was from this area that the large boulder had broken away, striking the claimant’s car and the claimant, Kermit Jeter. The witness further stated that, in order to prevent events such as the one which occurred in this claim, the respondent could have constructed a retaining wall 100 feet high along the entire face of the rock wall. In the alternative, a masonry wall could be constructed over the face of the shale and thus shield the shale from the weather’s eroding effect.
Counsel for the claimants introduced into evidence various excerpts from the West Virginia Department of Highways Maintenance Manual. The Manual sets forth various methods for controlling rock falls, such as the formation of a bench in dangerously cut slopes, the removal of overhanging rock fragments before they are dislodged by natural forces, the construction of a masonry wall as referred to above, and finally, the erection of wire mesh fencing of suitable height to stop falling rocks before they can reach the road. The Manual also provides that, while the standards set forth are established, it is possible that such factors as volume and type of traffic, limitations on funds, or local conditions might render exact compliance with the standards impractical. Considering the thousands of comparable areas existing in this State, where rock falls might take place, and the millions of dollars that would have to be spent in order to comply with the Manual, we are not prepared to hold that the failure of the respondent to strictly comply with those standards constitutes negligence. See generally Adkins v. Sims, 130 W.Va. 645, 46 S.E.2d 81 (1947), Lowe v. Department of Highways, 8 Ct.Cl. 210 (1971).
The Court is of the opinion that the claimants have failed to establish by a preponderance of the evidence that the respondent, on May 26, 1977, knew or should have known that a dangerous condition existed on Alternate Route 22 in the City of Weirton. Therefore, the respondent was not guilty of negligence, and without proof of actionable negligence, there can be no recovery.
Claims disallowed.