WEBB, JUDGE:
Claimant Jo Ann Bradshaw brought this action for personal injuries and for the wrongful death of her husband, Bernard Bradshaw, Jr., when the vehicle in which she and her husband were traveling was struck by a large boulder on 1-77 one quarter mile south of the Edens Fork road exit in Kanawha County. 1-77 is a highway maintained by respondent. The Court is of the opinion to deny this claim for the reasons more fully set forth below.
The incident giving rise to this claim occurred on November 7, 1998, at approximately 7:51 p.m. On the night in question, claimant and her husband were proceeding southbound in their 1998 Dodge Intrepid on 1-77. They were returning from Wheeling to their residence in Huntington. They were traveling at a speed of about seventy miles per hour. Along the interstate in this vicinity, there were no signs indicating that this area was a rock fall area. As claimant’s husband drove their vehicle on the interstate in the right lane of the two southbound lanes, the vehicle was struck by a large boulder that was in the act of falling from the high rock face on the west side of the highway above the interstate. The impact with the boulder crushed the front of the vehicle. Tragically, claimant’s husband died at the scene and claimant sustained severe personal injuries.
Claimant asserts the following:
1) that respondent was at fault for this collision as it had actual or, at the least, constructive notice of the unsafe condition posed by the proximity of the rock wall adjacent to the highway and its potential to break away from the hillside and fall onto the highway below;
2) that despite the knowledge it had, respondent negligently and with gross and wilful, wanton and reckless disregard for the safety of citizens failed to take measures that would have protected the safety of the public generally from the dangers of falling rock where the highway passed through a cut-away hillside;
*171 3) that the respondent failed to warn the public of the potential of falling rock; and,
4) that respondent knew or should have known of the dangers of falling rock and used accepted engineering practices to prevent the same.
Claimant established in the presentation of its claim that a rock fall had occurred in 1994, to the south of the area in question, which involved a large rock falling from the hillside above the interstate. It is this occurrence which claimant contends gave notice to respondent that the whole area had a potential for hazardous rock falls. In support of its allegations, claimant provided evidence that, as a general practice, when a rock greater in size than a person’s hand falls near the road surface, the maintenance supervisor over the road in question has a duty to notify the district office. However, there was nothing in respondent’s records to ascertain whether the 1994 incident was reported to the district office and there was nothing to establish that the specific hillside area had been inspected after the 1994 rock fall. Claimant contends that the incident in 1994 provided respondent with sufficient notice of a hazardous area and the opportunity to make necessary corrections, but it failed to exercise due diligence in correcting the known rock fall hazard, which could have prevented this catastrophe. In 1994, claimant asserts that respondent should have conducted an engineering survey of the hillside for potential rock fall evidence, and respondent should have installed falling rock signs at this location. Further, respondent, having had notice of the previous incident, should have monitored the area and should have taken action to remove any rocks or areas of rock that potentially could fall from the hillside onto the interstate.
Additionally, claimant established that respondent’s employees did not receive specific training in the recognition of hazardous areas on hillsides of this nature so that they would have the knowledge to advise their superiors of potential rock fall areas.
Respondent m aintains t hat it h ad no notice r egarding p otential r ock f all problems in this specific area of 1-77 at mile post 106 in Kanawha County. The location in question is not a known rock fall area. At the hearing, the parties stipulated that respondent’s employees were on this portion of the interstate on a daily basis. These employees were performing routine maintenance.[1] Once respondent received information regarding the rock fall in this claim, it immediately dispatched employees to the site to remove the boulder, to clear rock debris from the highway, and to secure the scene. Furthermore, David Charles Fisher, Supervisor of the Sissonville office, testified that the 1994 rock fall incident occurred some one *172 hundred-fifty feet south of the location in this claim at mile post 111. In that incident a rock approximately three to four feet high by four feet long and three to four feet wide had fallen from the mountain and made it onto the shoulder area of the road. Before this incident, he had not observed any formations on the rock face that should have caused concern. Although Mr. Fisher was sure that he reported this incident to his superior, he did not have any record to establish that the district office was notified about the 1994 rock fall incident.
According to respondent’s expert in geotechnical engineering, Dr. George Alan Hall, the rock formation at this location on 1-77 consists of a fairly massive layer o f s andstone approximately twenty feet thick with embedded thin layers of sandstone and soft shale and more soft shale in the hillside below the rock, a geological formation prevalent throughout the State. Dr. Hall explained that there are problems with all rock in this situation because there are joints and fractures in the rock. This particular formation also had another problem in that there is soft shale beneath the sandstone which can weather away and remove some support form the bottom of the sandstone. The fractures leave a wedge shaped piece of rock between the fractures and when shale weathers out from underneath these wedge shape fractured pieces of sandstone, frequently removing the support underneath the sandstone, then a sandstone block can break off and fall. The piece of the face of the hillside that fell onto the Bradshaw vehicle was estimated to be approximately eight feet high, seven feet wide across the face, and about three and a half feet thick. He described this piece of rock as being nearly one hundred cubic feet of rock. Photographs in evidence depict the exact area from which the boulder came out of this hillside and rolled down onto the highway. There is evidence of the path which the boulder took down the hillside since debris was left on the hillside and there was evidence that vegetation was disturbed. Dr. Hall opined that a rock fall like this can break very suddenly and there is no way to prevent it, i. e., the rock fall event from occurring.
Dr. Hall indicated that employee training regarding this type of formation is an issue of common sense and that the key to a rock face inspection is observing movement in the rock face. If there is movement in the rock face as evidenced by a visual observation of fractures therein, then respondent has a cause for concern. Before the incident herein, Dr. Hall testified that he regularly traveled this portion of road, and he did not observe any movement in the hillside strata. Further, Dr. Hall is of the opinion that the crevice in the hillside visible after this particular rock fall and the rock fall itself could have occurred simultaneously. The rock that struck the Bradshaw vehicle appeared to have “popped out very quickly” from the hillside. This act gave the rock the initial velocity to roll rapidly and leap into the road. Usually there have been cycles of cooling, heating, freezing, thawing, causing the rock to break loose suddenly and move very quickly. Consequently, Dr. Hall opined that prior to the rock fall incident herein respondent had no reason to be *173 concerned that there was a potential for a rock fall from this exact hillside location on 1-77.
In a nswer to questions a bout t he u se o f b enching o n h disides, D r. H all explained that benches can be used as catchment areas for rocks, but these areas are generally at the bottom of the.hillside. In the instant claim at the location of the rock fall on 1-77, there is an area at the bottom of the hillside 12-15 feet wide that serves as both a ditch and catchment area. There is also a guardrail at this location adjacent to the interstate. However, Dr. Hall testified that benches placed in horizontal planes on hillsides may be 10-20 feet in width and these are to weather and to help prevent the weathered zone in the shale. The benches are not intended to catch rocks falling from the hillside.
This Court has consistently held that the unexplained falling of a boulder or rock debris on the road surface is insufficient to justify an award. Mitchell vs. Division of Highways, 21 Ct. Cl. 91 (1996); Hammond vs. Dept. of Highways, 11 Ct. Cl. 234 (1977). In order to establish liability on behalf of respondent, the evidence must establish that respondent had notice of the dangerous condition posing the threat of injury to property and a reasonable time to take suitable action to protect motorists. Alkire vs. Division of Highways, 21 Ct. Cl. 179 (1997).
The evidence adduced by claimant at the hearing failed to establish that respondent was negligent in assuring the safety of the traveling public on 1-77 in Kanawha County. As soon as respondent became aware of the rock fall on 1-77, it took immediate corrective action. Based upon the resources available to the State and the number of rock formations in this State, it is a practical impossibility to do in-depth statewide inspections of all rock face hillsides along all of the State-maintained roads in our State. According to the testimony of Dr. Hall, even if an intensive inspection had been conducted in this specific area before the incident, there was nothing to indicate a hazard to the traveling public. As a practical matter, the Court is of the opinion that the usual and customary inspections of this particular rock face and hillside performed by respondent could not have prevented this terrible tragedy. While the Court is sympathetic to the plight of claimant and her family, and the ensuing tragedy with which they daily live, the fact remains that there is insufficient e vidence o f n egligence u pon w hich tobaseana ward. T he C ourt is mindful of the fact that the claimant was ably represented by her attorney who made a thorough and complete presentation of the evidence available to her.
In accordance with the finding of facts and conclusions of law stated herein above, the Court is of the opinion to and does deny this claim.
Claim disallowed.

 Records maintained by respondent indicated employees were looking for hazards such as debris on the road surface or on the berm area. They also patrolled for holes or other vehicular hazards.